UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMIELYN MORROW,

                                Plaintiff,

v.                                                            8:09-CV-0992
                                                              (LEK/GHL)
MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                                Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER               MARK A. SCHNEIDER, ESQ.
*Counsel for Plaintiff*
57 Court Street
Plattsburgh, NY 12901

SOCIAL SECURITY ADMINISTRATION            SHEENA V. WILLIAMS-BARR, ESQ.
Office of Regional General Counsel - Region II   Special Assistant U.S. Attorney
*Counsel for Defendant*
26 Federal Plaza - Room 3904
New York, NY 10278

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION[1]

### I.      BACKGROUND

#### A.      Procedural History

On February 7, 2007, Plaintiff Jamielyn Morrow applied for disability insurance benefits

("DIB") and supplemental security income ("SSI").  Administrative Transcript ("T") 20, 66-71.

On March 7, 2007, the applications were denied by the Social Security Administration.  T 20.

---

[1]  This matter was referred to me for report and recommendation by the Honorable
Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and
Northern District of New York Local Rule 72.3.

On November 5, 2008, a hearing was held before an Administrative Law Judge ("ALJ").  T 447-

62.  On February 19, 2009, the ALJ determined that Plaintiff was not disabled.  T 17-29.

Plaintiff appealed to the Appeals Council.  T 53.  On July 29, 2009, the Appeals Council

denied Plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner.  T 4-7.  Plaintiff commenced this action on August 31, 2009.  Dkt. No. 1.

### B.     The Contentions

Plaintiff makes the following claims:[2]

1.     The Commissioner did not meet his burden to prove that Plaintiff can perform work.  Dkt. No. 11 at 11-12.

2.     The ALJ erred in concluding that Plaintiff had the residual functional capacity ("RFC") to perform work.  Dkt. No. 11 at 12-14.

3.     Plaintiff is disabled by her mental illness either by itself or in combination with her other impairments.  Dkt. No. 11 at 14-19.

4.     Plaintiff did not have the RFC to perform work because of her non-exertional limitation of pain.  Dkt. No. 11 at 19-20.

5.     The ALJ erred in not using a vocational expert.  Dkt. No. 11 at 20.

6.     The ALJ violated the treating physician rule in denying benefits to Plaintiff.  Dkt. No. 11 at 21-25.

7.     The ALJ erred as a matter of law in not crediting Plaintiff's testimony regarding her limitations.  Dkt. No. 11 at 25-28.

8.     The ALJ erred in determining that Plaintiff was not disabled because she did not continue with her psychological therapy.  Dkt. No. 11 at 28-30.

---

[2]  I note that in the "Discussion" section of Plaintiff's brief, Plaintiff's counsel failed to cite to the administrative transcript in most instances.  Plaintiff's counsel is reminded that under General Order 18, "[e]ach contention **must be** supported by specific reference to the portion of the record relied upon."  N.D.N.Y. G.O. 18 at 2 (emphasis added).

2

Defendant disagrees, and argues that the decision should be affirmed.  Dkt. No. 13.

## II.     APPLICABLE LAW

### A.      Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or

supplemental security income benefits must establish that he is "unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") has promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 404.1520.  "If at any step a

finding of disability or non-disability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that
> he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b),
> 416.920(b).  At step two, the SSA will find non-disability unless the claimant
> shows that he has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the claimant's] physical or

mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587-88 (2d Cir. 1984).

4

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## III.    THE PLAINTIFF

Plaintiff, who was twenty-two years old at the time of the hearing, completed high school. T 450-51. Plaintiff lives with some family members. T 450. She has two children. T 454.

Plaintiff last worked as a certified nurses' assistant. T 110, 451. She previously worked in various positions, including as a housekeeper and kitchen helper. T 110.

Plaintiff claimed disability due to problems with her knees, hip, and back, as well as depression, bipolar disorder, and anxiety. T 109, 118. She also states that she experiences

difficulty reading.  T 456.

**IV.    THE ALJ'S DECISION**

In determining that Plaintiff was not disabled, the ALJ made the following findings:

1.    Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  T 22.

2.    Plaintiff's bipolar disorder II and post-traumatic stress disorder ("PTSD") were severe impairments.  T 22.

3.    Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  T 22.

4.    Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to understanding, remembering, and carrying out simple, routine repetitive tasks in a low stress work environment with minimal interaction with the public.  T 25.

5.    Plaintiff is unable to perform any past relevant work.  T 28.  Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  T 28. Therefore, Plaintiff is not disabled.  T 28-29.

**V.    DISCUSSION**

**A.    Listed Impairments**

Plaintiff summarily argues that she meets Listings 12.04 and 12.06.  Dkt. No. 11 at 14-19. Plaintiff vaguely refers to certain diagnoses and other information contained in the record.  *Id.* She also summarily claims that the ALJ failed to discuss the paragraph B and C criteria of the listings in question.  *Id.*  Defendant argues that the ALJ properly determined that Plaintiff did not meet or equal a listed impairment.  Dkt. No. 13 at 5-6.  Defendant also points out that the ALJ clearly discussed the criteria set forth in paragraphs B and C.  *Id.*

A claimant is automatically entitled to benefits if his or her impairment(s) meets criteria

set forth in "the Listings." 20 C.F.R. § 404.1520(d). The burden is on the plaintiff to present

medical findings that show that his or her impairments match a listing or are equal in severity to

a listed impairment. *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July

27, 1998). In order to show that an impairment matches a listing, the claimant must show that

his or her impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S.

521, 530 (1990); 20 C.F.R. § 404.1525(d). If a claimant's impairment "manifests only some of

those criteria, no matter how severely," the impairment does not qualify. *Sullivan*, 493 U.S. at

530.

Listing 12.04 provides as follows:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied
by a full or partial manic or depressive syndrome. Mood refers to a prolonged
emotion that colors the whole psychic life; it generally involves either depression
or elation. **The required level of severity for these disorders is met when the
requirements in both A and B are satisfied, or when the requirements in C
are satisfied.**

A. Medically documented persistence, either continuous or intermittent, of one of
the following:

1. Depressive syndrome characterized by at least four of the following:
    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    I. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
    a. Hyperactivity; or
    b. Pressure of speech; or

c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.04 (emphasis added).

8

Listing 12.06 provides as follows:

12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

**The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.**

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning;

Or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or

9

3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.06 (emphasis added).

Here, the ALJ found that Plaintiff's mental impairments "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." T 24. In making this determination, the ALJ clearly discussed whether the paragraph "B" criteria were satisfied. T 24-25. The ALJ noted that to satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. T 24.

Regarding the domain of "activities of daily living," the ALJ found that Plaintiff had a mild restriction in this domain. T 24. He explained that Plaintiff took care of her personal needs, took care of her two young children, did some household chores, and used public transportation. T 24.

Regarding the domain of "social functioning," the ALJ found that Plaintiff had moderate difficulties. T 24. He explained that Plaintiff socialized with her boyfriend and mother. *Id.* He also noted that Plaintiff was able to function in a low stress setting with minimal social demands. *Id.*

Regarding the domain of concentration, persistence, or pace, the ALJ found that Plaintiff

had moderate difficulties.  T 25.  He explained that Plaintiff's IQ scores indicated that Plaintiff

had average intelligence.  *Id.*  He noted that Plaintiff was able to understand, remember, and

carry out very short and simple instructions.  *Id.*

Regarding the episodes of decompensation, the ALJ found that Plaintiff had experienced

no episodes of decompensation.  T 25.

The ALJ also examined the "paragraph C" criteria.  T 25.  The ALJ found that the

evidence failed to establish the presence of "paragraph C" criteria.  *Id.*

Therefore, the ALJ clearly discussed the paragraph B and C criteria, and supported his

findings with substantial evidence.  Moreover, while Plaintiff vaguely cited to information in the

record, she fails to suggest how this information demonstrates that she meets a listing.

Accordingly, I recommend that the matter in this regard be affirmed.

## B.    Opinion Evidence

Plaintiff argues that the ALJ and/or the Appeals Council improperly evaluated several

opinions rendered by treating sources.  Dkt. No. 11 at 24.  Defendant argues that no such errors

were committed.  Dkt. No. 13 at 6-10.  The Court will examine the opinions in turn.

### 1.    Jan Norcross, Therapist

Plaintiff argues that the ALJ "improperly discounted" an opinion rendered by Jan

Norcross, a mental health therapist, because Plaintiff "had not yet been re-admitted as a patient."

Dkt. No. 11 at 24.  Defendant argues that the ALJ properly discounted the opinion because it was

not based on an evaluation of Plaintiff.  Dkt. No. 13 at 7.

The Social Security regulations specifically contemplate the use of medical information from "other sources," including therapists, to provide insight into the severity of plaintiff's impairments and how they affect her ability to work.  20 C.F.R. § 416.913(d).  "Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  S.S.R. 06-03p, 2006 WL 2329939, at *3; see *Bono v. Massanari*, No. 00-CV-5461, 2001 WL 1104688, at *4 (E.D.N.Y. 2001) (applying "due consideration" to treating therapist's opinion).  An "opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."  S.S.R. 06-03p, at *5.

Here, the ALJ thoroughly reviewed the opinion rendered by Ms. Norcross.  T 22-23.  The opinion, which was set forth in a letter addressed to Plaintiff's attorney, indicated that Plaintiff was diagnosed as suffering from bipolar disorder and PTSD.  T 393.  Ms. Norcross also described Plaintiff's subjective complaints of, *inter alia*, mood swings, verbal outbursts, decreased appetite, trouble sleeping, and irritability.  *Id.*  She also acknowledged that Plaintiff had not yet been admitted to the clinic, and that she was receiving no medication from the clinic. *Id.*  She found that once Plaintiff's mental health stabilized, Plaintiff "would be capable of working, at the very least on a part[-]time basis."  *Id.*

The ALJ afforded "little weight" to the opinion rendered by Ms. Norcross.  T 27.  He noted that she opined that Plaintiff "would be capable of working, at the very least, on a part-time basis when stabilized."  *Id.*  However, as the ALJ noted, Plaintiff had not yet started treating with

12

Ms. Norcross at the time she rendered the opinion; "therefore her opinion is not supported by mental status examinations." *Id.*

In light of the foregoing, the ALJ properly assigned little weight to Ms. Norcross's opinion. Accordingly, I recommend that the matter in this regard be affirmed.[3]

### 2.      John Schenkel, M.D., Psychiatrist

Plaintiff argues that the ALJ and the Appeals Council should have given more weight to a report from John Schenkel, M.D., a treating psychiatrist, in which a GAF score of 48[4] was noted. Dkt. No. 11 at 24.  Plaintiff also argues that the ALJ and the Appeals Council failed "to credit" Dr. Schenkel's findings that Plaintiff suffers from bipolar disorder and PTSD. *Id.*  Defendant argues that Dr. Schenkel's report "reveals absolutely no medical findings to support his GAF score [nor does he] identify any functional restrictions caused by [P]laintiff's impairments."  Dkt. No. 13 at 8.

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Even if the treating physician's opinion is contradicted by

---

[3]  To the extent that Plaintiff argues that the ALJ "incorrectly determined that [Plaintiff] should have continued with psychological therapy," (Dkt. No. 11 at 29 (citing T 22)), the ALJ made no such determination.  The ALJ simply pointed out in his summary of the evidence that "there is no evidence in the record that the claimant followed up with psychotherapy treatment." T 22.

[4]  A GAF score between forty-one and fifty indicates the presence of serious symptoms or a serious impairment in social, occupational, or school functioning.  *Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").

substantial evidence and thus is not controlling, it still may be entitled to significant weight

"because 'the treating source is inherently more familiar with a claimant's medical condition than

are other sources.'" *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting

*Gonzalez v. Callahan*, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997)

(citing *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988))).  However, if not controlling, the

proper weight given to a treating physician's opinion depends upon the following factors: (1) the

length of the treatment relationship and frequency of examinations; (2) the nature and extent of

the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency

of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6)

any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  **Omission of this analysis is considered failure to apply the proper legal**

**standard, and is grounds for reversal of the Commissioner's determination**. *Schaal v. Apfel*,

134 F.3d 496, 505 (2d Cir. 1998).

      Here, the ALJ made no mention of Dr. Schenkel's report.  As noted, the report indicates

that Plaintiff was diagnosed as suffering from bipolar disorder and PTSD and that Plaintiff has a

GAF score of 48.  T 380-81.  Also, the treatment plan portion of the report states, *inter alia*, the

following:

| | |
|---|---|
| Problem 1: | [Plaintiff] has frequent mood swings, **which adversely impacted her daily functioning.** |
| Goal: | [Plaintiff] will achieve mood stabilization, **so that her daily functioning is no longer impaired.** |
| . . . . | |
| Problem 2: | [Plaintiff] experiences daily memories and flashbacks of her past abuse, **which are interfering with her life and are identified as being in need** |

14

**of change**.

Goal:       [Plaintiff] will gain control over her recurring memories **so that they no longer are a significant interference in her life**.

T 382 (emphasis added).

Thus, contrary to Defendant's argument that Dr. Schenkel's report "reveals absolutely no medical findings to support his GAF score . . . . and does not identify any functional restrictions caused by Plaintiff's impairments," Dkt. No. 13 at 8, the report indeed includes medical findings in the form of Plaintiff's diagnoses and explicitly suggests that she experienced "functional restrictions."

Moreover, I note that Dr. Schenkel's opinion of Plaintiff's GAF score is consistent with other medical evidence.  For instance, as pointed out by Defendant himself, another source, Jon Standahl, Ph. D., opined that Plaintiff's GAF score was 45, *which is slightly lower than the score assessed by Dr. Schenkel*.  T 326-30.  The ALJ afforded "significant" weight to Dr. Standahl's opinion, which Defendant concedes is "[i]nteresting."  T 27; Dkt. No. 13 at 8.

In light of the foregoing, I recommend that the matter be remanded due to the ALJ's failure to discuss Dr. Schenkel's opinion.

**3.       Elnora Mills, Nurse Practitioner**

Plaintiff argues that the ALJ and the Appeals Council "failed to credit" reports rendered by Elnora Mills, a treating nurse practitioner.  Dkt. No. 11 at 24.  Defendant argues that the Appeals Council reviewed the reports rendered by Nurse Mills, but that the Appeals Council properly determined that Nurse Mills's reports were all dated after the ALJ's decision, and did not relate back to the period before the ALJ's decision.  Dkt. No. 13 at 10.

A nurse practitioner is defined as an "other source" "whose opinions may be considered with respect to the severity of claimant's impairment and ability to work, but need not be assigned controlling weight." *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008); 20 C.F.R. § 416.913(d)(1).

Here, Nurse Mills completed a psychiatric assessment on April 20, 2009.  T 440-42.  In the assessment, Nurse Mills indicated that Plaintiff's GAF score was 45.  T 442.

Nurse Mills also completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" on June 1, 2009.  T 11-12.  In the statement, Nurse Mills indicated that Plaintiff had marked limitations in all of the listed mental abilities.  *Id.*  Nurse Mills also wrote a letter to Plaintiff's counsel in which she stated that Plaintiff was unable to work on a full-time sustained basis.  T 10.

To the extent that Plaintiff argues that the ALJ erred when he "failed to credit" reports from Nurse Mills, the documents from Nurse Mills were generated after the ALJ issued his decision.  Therefore, this argument is unavailing.

To the extent that Plaintiff argues that the Appeals Council erred in the same regard, this argument requires further discussion.  In their decision denying appeal, the Appeals Council noted that they "considered the reasons [Plaintiff] disagree[d] with the [ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council."  T 4.  The enclosed Order states the following:

> The Appeals Council has received additional evidence which it is making part of the record.  That evidence consists of the following exhibits:
>
> Exhibit AC-1  Medical evidence from CVPH Medical Center dated 03-13-09 to

05-06-09.

Exhibit AC-2   Medical evidence from Behavior Health Services North dated 02-03-09 to 03-31-09.

T 7.

Thus, it appears that the Appeals Council never reviewed the July 1, 2009, letter and Medical Source Statement from Nurse Mills. Therefore, this matter should be remanded. On remand, the July 1, 2009, letter and Medical Source Statement from Nurse Mills should be reviewed.

### C.    Credibility

Plaintiff argues that the ALJ erred by completely failing to assess her credibility, which included her subjective testimony regarding pain. Dkt. No. 11 at 19-20, 25-28. Defendant argues that the ALJ properly evaluated Plaintiff's subjective complaints. Dkt. No. 13 at 10-11.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical

17

impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."
20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such
impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a
claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.
20 C.F.R. § 404.1529(c). When the objective evidence alone does not substantiate the intensity,
persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of
the claimant's subjective complaints by considering the record in light of the following
symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and
intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage,
effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment
received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and
(7) any other factors concerning claimant's functional limitations and restrictions due to
symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ's evaluation of a plaintiff's credibility is entitled
to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, No. 00-9621,
2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citations omitted)).

Here, the ALJ recited the two-step process and reviewed Plaintiff's testimony in some
detail. T 26-27. However, the ALJ failed to discuss the symptom-related factors set forth in the
regulations, which was error. To the extent that the ALJ attempted to point out inconsistencies
between certain statements made by Plaintiff and the evidence, (T 27), such attempts do not
satisfy the ALJ's requirement to discuss the symptom-related factors. Moreover, it is unclear
what weight the ALJ gave to Plaintiff's statements. An ALJ's decision must contain specific

18

reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the ALJ gave to the individual's statements and the reasons for that weight.  SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  Here, the ALJ's decision fails to contain such reasons.

In light of the foregoing, the Court is unable to find that the credibility determination is supported by substantial evidence.  Therefore, the matter should be remanded in order for the ALJ to properly analyze Plaintiff's credibility.

### D.    Residual Functional Capacity

Plaintiff argues that the RFC determination was not supported by substantial evidence. Dkt. No. 11 at 12-14.  Defendant argues that the ALJ properly determined Plaintiff's RFC.  Dkt. No. 13 at 12-14.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments.  20 C.F.R. § 404.1545(a).  An  RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)(Hurd, J.).

Here, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with some nonexertional limitations.  T 25.  In making this determination, the ALJ weighed several medical opinions and summarized Plaintiff's testimony.  However, as noted, (1) the ALJ failed to discuss Dr. Schenkel's opinion; (2) the Appeals Council failed to consider Nurse Mills opinion; and (3) the ALJ failed to fully evaluate Plaintiff's credibility.

Therefore, the Court is unable to find that the RFC determination was supported by substantial evidence.  Accordingly, on remand, Plaintiff's RFC determination should be reevaluated.[5]

### E.    Vocational Expert

Plaintiff argues that the ALJ erred by failing to consult a vocational expert.  Dkt. No. 11 at 20.  Defendant argues that the ALJ committed no error in this regard.  Dkt. No. 13 at 12-14.

Because the Court is recommending remand for several reasons, the Court recommends remand on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations.  *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

**WHEREFORE**, for the reasons set forth above, it is hereby

**RECOMMENDED**, the Commissioner's determination of no disability be VACATED and the matter REMANDED to the agency for further consideration.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[5]  To the extent that Plaintiff argues that Defendant did not meet his burden of proof that Plaintiff "had a reasonable chance of being hired and maintaining such work," (Dkt. No. 11 at 14), the Regulations provide that "[i]t does not matter whether (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work.  20 C.F.R. § 416.966(a).  Thus, Plaintiff's argument is unavailing.

*Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 30, 2010
       Syracuse, New York

George H. Lowe
United States Magistrate Judge